[Civ. No. 2856. First Appellate District, Division One.—July 15, 1919.]

DAVID I. MACKEY, Appellant, v. HENRY S. BRIDGE, Respondent.

[1] CONTRACTS—ENDEAVOR TO SELL ENCUMBERED PROPERTY—AGREEMENT TO DIVIDE PROFITS—REDEMPTION FROM FORECLOSURE SALE—RIGHTS OF PARTIES—INTENT—EVIDENCE.—Where the owner of a tract of land, after his default had been entered in an action to foreclose a mortgage thereon, but prior to sale therein, executed a quitclaim deed of the property to the trustee under a deed of trust given as security for the payment of an indebtedness to the wife of such trustee under an agreement wherein it was provided that in consideration of such trustee's not selling under the deed of trust, the owner would deed the property to him and he would endeavor to sell the land and divide the profits with such owner, and no time was provided in which such trustee was to make such endeavor, and an endeavor was attempted but without success up to the time of the sale in the mortgage foreclosure proceeding, such owner was not entitled to a division of the profits made by such trustee through sales of the property made by him following his redemption of the property from the sale under the foreclosure proceeding; and in an action to recover such division of the profits, parol evidence was admissible to show the real intentions of the parties under the original agreement pursuant to which the quitclaim deed was executed to such trustee.

APPEAL from a judgment of the Superior Court of Alameda County. Joseph S. Koford, Judge. Affirmed.

The facts are stated in the opinion of the court.

Nowlin, Fassett & Little for Appellant.

Edwin T. Cooper for Respondent.

RICHARDS, J.—This is an appeal from a judgment in favor of the defendant. The action is one to have it declared that a relation of trust existed between one Wm. H. Nelson, the predecessor in interest of the plaintiff, and the defendant, in relation to the ownership and sale of a certain piece of real estate, upon which the plaintiff predicates his demand for an accounting and division of the proceeds of the sale of said real estate.

[1] The facts of the case are substantially these: In the latter part of the year 1906 Wm. H. Nelson was the owner of a certain tract of land in Yuba County, California, upon which there were two outstanding encumbrances. The first of these was a mortgage to one Gatkins, securing a note then due from said Nelson to the mortgagee for the sum of fifteen thousand five hundred dollars, together with $1,017.10 overdue interest. The second encumbrance was in the form of a deed of trust to H. S. Bridge, the defendant herein, securing an indebtedness of four thousand six hundred dollars due by said Nelson to the wife of said Bridge, which was also with considerable interest overdue. An action had been commenced to foreclose the Gatkins mortgage, in which said Nelson had made no appearance and was in default, and in which also the Bridges, husband and wife, having been made parties, had defaulted. The real estate thus affected had been suffered by the mortgagor to be much neglected and out of repair, while the taxes upon the same had for some time been unpaid. While things were in this desperate and deplorable condition, one Herman Murphy, who had been the agent of Nelson in negotiating the loan from the Bridges, had an interview with the defendant, H. S. Bridge, in an endeavor, apparently, to save something out of the impending wreck of Nelson's fortunes, as a result of which said Bridge and Murphy prepared the following letter:

"San Francisco, Nov. 26, 1906.

"Mr. Wm. H. Nelson,

"Dear Sir:—

"In consideration of your deeding me the ranch at Horncut instead of my selling it under trust deed I hereby agree to endeavor to sell it and agree to give you half the profit beyond cost to me, cost to be estimated as amount of liens now against the property and any advances I may make, said advances to draw interest at $1\frac{1}{2}\%$ per month.

"Am, very truly,

"Henry S. Bridge.

"Witness: Herman Murphy."

This letter was delivered by Murphy to Nelson, who thereupon executed a quitclaim deed to H. S. Bridge covering his involved porperty, which deed said Murphy had prepared. Immediately following this letter and deed, H.

S. Bridge endeavored to make a sale of the property for a sum slightly in excess of the amount required to pay the indebtedness against it, but was unable to do so, and on February 9, 1907, the property was sold at public auction under the Gatkins foreclosure and was bought in by Gatkins for the sum of $17,962.08, the amount with costs then due upon the judgment in his foreclosure suit. A month or so after this sale Bridge applied to a friend named Aaron for a loan to the former's wife of a sum of money sufficient to enable her to redeem the property from the Gatkins sale. He was able to secure a loan from this source of the sum of fifteen thousand dollars. Mrs. Bridge supplied from her own funds the additional sum of $3,368.56 needed to make up the sum then required for the redemption of the property, which being paid to Gatkins he executed a quitclaim deed of the property to H. S. Bridge, who took the title to the same as his wife's trustee. Almost immediately after the Bridges had thus taken over the title to the property a disastrous flood swept over the land, destroying in large part the buildings and fences thereon, and requiring an expenditure of several thousand dollars to put the premises in a state of repair. The money for this outlay was provided by Mrs. Bridge and amounted to about eight thousand dollars. Other expenditures to a considerable amount were also made by the Bridges during the years which intervened between the date of their acquisition of the property and the time when they began disposing of the same to various parties. The first of these sales was made to Chas. A. Wetmore, Jr., in September, 1909, who then bought a portion of the property for the purchase price of thirty-five thousand dollars. About a year later said Wetmore bought the remainder of the property for the purchase price of twenty-two thousand dollars. Both of these purchases by Wetmore were made on long-time payments, the latter evidently expecting to pay for the property by resales to other parties, who, as they bought, took deeds directly from the Bridges. Altogether the Bridges realized from these sales of the property and from rents in the meantime the sum, as the court found, of $67,536.91, the payments aggregating this sum extending over a period of nearly ten years, and there being still a small amount due from Wetmore upon his con-

tracts of purchase at the time this action was begun in June, 1917. In the meantime Nelson had disposed of whatever interest he may have had in the matter by virtue of the above-quoted letter from H. S. Bridge. Meeting Murphy in the latter part of 1906, and needing money badly, the latter advanced him $25. It appears that Nelson had already borrowed the sum of $250 from Murphy, acting as the agent of his brother-in-law, David I. Mackey, the plaintiff herein, for which he had taken Nelson's note, and which he now agreed to return to Nelson if he would sign a written order on H. S. Bridge, directing the latter to pay to Mackey all sums due or to become due Nelson by virtue of the agreement contained in the above-quoted letter from Bridge to Nelson. Murphy prepared and Nelson signed this paper, and it furnishes the foundation for the plaintiff's claim. From the time of the execution of this document in December, 1906, and until the spring of 1916, neither Murphy nor Mackey informed the Bridges of the existence of this writing, or of any interest acquired or held by them or either of them in the proceeds of the sale of the Nelson property, nor asked for any accounting thereof. Their first activities in that direction were manifested in the early part of 1916. This action was commenced on June 14, 1917. Upon the trial of the cause the plaintiff offered in evidence the above-quoted letter from Bridge to Nelson, and also the letter from Nelson to Bridge, purporting to transfer to the plaintiff whatever interest Nelson had acquired in the proceeds of sales of his former property by virtue of the aforesaid letter from Bridge to him. The plaintiff also offered evidence as to the transfer of the property by Nelson to the Bridges and the later transactions involved in its sale by them. With these proofs the plaintiff rested his case, whereupon the defendant undertook to offer parol evidence as to the circumstances surrounding the signing of his said letter to Nelson and the execution of the quitclaim deed from Nelson to him. To these offers the plaintiff objected, upon the ground that such evidence was inadmissible to vary the terms of the writing or to explain its real meaning and effect. The court, however, admitted this evidence, and upon the strength of its admission and effect gave its decision in the defendant's favor. It is upon the alleged error of this

ruling that the appellant chiefly relies for a reversal of the case.

We are of the opinion that the trial court was not in error in its admission of the oral evidence offered on behalf of the defendant showing the circumstances under which the letter from Bridge to Nelson was written, and explaining the meaning and effect of its terms. It is to be noted that, although the letter of Bridge to Nelson seems as to some of its phraseology to agree to give Nelson one-half of the profit realized by Bridge as the result of his endeavor to sell the property conveyed by quitclaim deed to him, it is silent as to the time within which such endeavor on Bridge's part was to be exercised. This omission, taken in connection with other clauses of the letter, and particularly with the proofs offered by the plaintiff himself as to the imminent peril of a total loss of the interests both of Nelson and of the Bridges in the event of a sale of the property under the Gatkins foreclosure, involves the writing as a whole in serious doubt as to just what Bridge was to endeavor to do as a consideration for the quitclaim deed to him, and also as to the time within which his endeavor to dispose of the property was to be confined. It is to be noted that the consideration for these endeavors on the part of Bridge was that of "your deeding to me the ranch at Horncut instead of my selling it under the trust deed." This of itself was a comparatively slight consideration, since by the sale of the property under the terms of the trust deed Bridge could at small expense and in a brief time have acquired the entire interest of Nelson by the purchase thereof at the trustee's sale. It was to save to both Bridge and Nelson this small expense and brief delay that the expedient of giving and taking the quitclaim deed was adopted; and this being so, the services to be performed by Bridge in his endeavor to sell the property, as well as the time within which these were to be exercised, must be measured by the value of the foregoing consideration. In view of these facts it would be an unreasonable interpretation to place upon the writing that Bridge had thereby bound himself for all the future period of his ownership of the property derived from this quitclaim deed to hold the same in trust for Nelson's benefit, and to continue his endeavor to sell it in order that the grantor of the perish-

ing interest in the property transferred by such quitclaim deed might realize half the profits derived from its eventual sale. This much seems certain, that under any construction of the terms of said writing it was not within the contemplation of the parties that the Bridges were to undertake to redeem the property from the threatened foreclosure sale, or to make the large borrowings and advances necessary so to do, nor to meet the other expenditures almost immediately necessary to preserve the property from the effects of neglect and flood. Under the circumstances shown by the plaintiff's own evidence in the case it was, we think, the duty of the trial court to admit oral testimony as to the real intent of the parties in relation to what Bridge was to undertake to do as a consideration for the transfer to him of Nelson's interest in the property in question, and as to the time within which his duty to Nelson in the premises would have been fully performed. This evidence thus properly admitted sufficiently shows that Bridge's endeavors to make a sale of the property were to be exercised before the interest of Nelson had become fully lost by the foreclosure and sale of the property under the Gatkins mortgage. The evidence shows that he did in good faith essay that endeavor, but without success. In due course the interest of Nelson was transferred to Gatkins through the foreclosure sale. Thereafter the interest of the Bridges in the property was precisely the same as it would have been if they had also sold out and bid in the Nelson interest under their deed of trust. They had succeeded to Nelson's right to redeem the property from the foreclosure sale by the payment of the amount due upon the Gatkins judgment. This they chose to do; but to hold that in so doing and in all of their later outlays and endeavors to dispose of the property they were acting in the capacity of trustees for Nelson, and were bound to an accounting with him or with his successors in interest for one-half of the profits of their eventual disposition of the property, would be to do violence to the obvious situation and understanding of the parties as disclosed by the evidence in the case.

This conclusion as to the main issue in the case disposes of the other contentions of the appellant as to the sufficiency of the evidence to sustain certain findings of the

court as to the profits realized by the respondent through the ultimate disposition of the property in question.

Judgment affirmed.

Waste, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 11, 1919.

All the Justices concurred.